UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 10-16-DLB-EBA

KATRINA BUSH                                                                  PLAINTIFF

vs.                      **MEMORANDUM OPINION AND ORDER**

CARTER COUNTY DETENTION CENTER, ET AL.          DEFENDANTS

\*    \*    \*    \*    \*    \*    \*

In this 42 U.S.C. § 1983 action, Plaintiff Katrina Bush alleges that Defendants Carter County,[1] Southern Health Partners, Inc., and Belinda Madden violated her Eighth Amendment rights when they acted "with deliberate indifference to her need for medical care." (Doc. # 1-2 ¶ 10). This matter is now before the Court on Defendants' motions for summary judgment. (Docs. # 25, 27). After the time for filing a response expired, the Court offered Plaintiff an additional week to oppose Defendants' motions, and warned that if she failed to do so, the Court would adjudicate Defendants' motions without the benefit of a response from Plaintiff. (Doc. # 28). This extension has also expired without any response from Plaintiff. Accordingly, Defendants' motions are now ripe for review.

---

[1] Though Plaintiff sued both Carter County and Carter County Detention Center, municipal departments such as jails are not "persons" subject to suit under 42 U.S.C. § 1983. *Marbry v. Corr. Med. Servs.* 238 F.3d 422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (Table). Accordingly, the Court construes the claims against Carter County Detention Center as against Carter County itself. *Rideout v. Daviess Cnty. Det. Ctr.*, No. 4:09-CV-P74-M, 2009 WL 3614310, at *2 (W.D.Ky. Oct. 29, 2009) ("The Court will therefore construe the claim against Daviess County Detention Center as brought against Daviess County.").

1

## I. BACKGROUND

Southern Health Partners (SHP) provided healthcare services to Carter County Detention Center (CCDC)—where the events giving rise to this suit took place—pursuant to a contractual arrangement. (Doc. # 27-3 at 3). Per the agreement, SHP provided full-time licensed practical nurses (such as Defendant Belinda Madden) to be present at CCDC seven (7) days a week and on call twenty-four (24) hours a day to treat inmates. (Doc. # 27-3 at 4-6). SHP also arranged for a physician and physician's assistant to be available for emergencies. (Doc. # 27-3 at 6-7). Madden testified that if there ever was an emergency situation where an inmate's life was in danger, the treating nurse had the authority to send the inmate to the hospital. (Doc. # 25-2 at 13-14).

Plaintiff Katrina Bush was arrested on June 24, 2008 in Carter County for possession of a controlled substance and promoting contraband. (Doc. # 25-3 at 2). Bush was released on bond, but her bond was revoked after she failed sixteen (16) drug tests; she was booked at CCDC on January 5, 2009. (Doc. # 25-3 at 3-5). Bush conceded that she was "high" when she was booked at CCDC because she had taken Percocet 30s before being incarcerated. (Doc. # 25-3 at 8-9). Bush warned the nurse who conducted her medical screening that she would be having withdrawals while incarcerated. (Doc. # 25-3 at 10-11).

On January 6, 2009—the day after being booked at CCDC—Plaintiff Bush informed Defendant Madden that she expected to begin withdrawals soon. (Doc. # 27-4 at 11-13). Defendant Madden, in turn, ordered that Plaintiff receive medication to treat the withdrawal symptoms. (Doc. # 27-4 at 12).

2

As expected, Bush began withdrawing from pain pills on January 7, 2009. (Doc. # 27-4 at 10-11). Bush explained that she had body cramps, sweating, vomiting, and diarrhea—symptoms similar to those she had experienced "[p]robably three or four" times in the past during prior withdrawals from pain pills. (Doc. # 27-4 at 8-9, 11-12). The next day, January 8, 2009, Bush was moved to a medical observation cell so SHP personnel could monitor her condition every fifteen minutes. (Doc. # 27-4 at 19; 27-3 at 10). On January 9, 2009 when Defendant Madden was leaving to go home, Plaintiff informed her that she was feeling better. (Doc. # 27-3 at 9).

On January 10, 2009, Bush's conditions worsened. (Doc. # 27-4 at 19-20). Plaintiff testified that over the next few days her vomiting became more frequent, her stomach began to swell, and her pain grew worse. (Doc. # 25-3 at 13-14).

The following day, January 11, 2009, Plaintiff Bush's parents and grandfather visited her for fifteen (15) minutes. Bush's grandfather was unable to recall the visit. (Doc. # 25-4 at 2). Bush's mother said Bush was "gray" and "looked so bad" but that she displayed no other symptoms. (Doc. # 25-5 at 2-3). Bush's mother testified that a deputy at CCDC explained that Bush was withdrawing from pain pills. (Doc. # 25-5 at 3). Bush's mother also stated that Bush "didn't mention anything" about wanting to go to the hospital. (Doc. # 25-5 at 4). Bush's father said that although she looked sick, he could not recall any specific symptoms. (Doc. # 25-6 at 3). Moreover, both Bush's father and grandfather testified that if they had believed something was seriously wrong with Bush they would have taken some action; both acknowledged, however, that they did not contact anyone at CCDC or request that Bush be taken to the hospital. (Docs. # 25-4 at 4-5; 25-6 at 4-5).

3

Bush's condition worsened in the early morning of January 13, 2009. Bush testified that she took a shower, struggled to walk back to her cell, fell asleep, and began hallucinating for the first time. (Doc. # 25-3 at 11-12). Bush testified that, on a scale of one to ten, her pain had increased from a four on the day she was moved to the observation cell, to "definitely a 10" by the early hours of January 13. (Doc. # 25-3 at 13).

Defendant Madden testified that she received a call at home in the early morning of January 13 from the CCDC deputy on duty who reported that Bush was pale, clammy, having abdominal pain, and that the appearance of Bush's vomit had changed. (Doc. # 25-2 at 11, 16). As a result of Bush's changed symptoms, Madden instructed the deputy that Bush needed to go to the hospital. (Doc. # 25-2 at 12-13). Madden said that before she received this call on January 13, she continued to believe that Bush was merely "going through a simple withdrawal." (Doc. # 25-2 at 10).

Bush was transported to Our Lady of Bellefonte Hospital in Ashland, Kentucky on January 13, 2009, where the recorded "admitting impression" was "[i]ntractable nausea and vomiting secondary to narcotic withdrawal." (Doc. # 25-7 at 2). By January 15, however, Bush had developed a "high grade fever" and her white blood cell count had increased. (Doc. # 25-8 at 1). Accordingly, she underwent exploratory surgery to determine the cause of her symptoms. (Doc. # 25-8 at 1). Surgery revealed that Bush had a ruptured appendix, which was removed. (Doc. # 25-8 at 1). Aside from the remaining scar, Bush testified that she has fully recovered. (Doc. # 25-3 at 19-20).

## II. ANALYSIS

### A. Standard

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### B. Application

Though Plaintiff Bush brings this action pursuant to the Eighth Amendment, because she was a "a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). Notwithstanding the technical distinction, the two are "similar claim[s]" that require Plaintiff Bush to show CCDC officials acted with deliberate indifference to her serious medical needs. *Border v. Trumbull Cnty. Bd. of Comm'rs*, 414 F.App'x 831, 835, 2011 WL 917253, at *5 (6th Cir. March 17, 2011). "[D]eliberate indifference violates an inmate's rights 'when the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care' for a serious medical need." *Phillips*, 534 F.3d at 539 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). To establish deliberate indifference, Plaintiff must prove objective and subjective components. Plaintiff cannot satisfy either prong.

#### 1. Objective Component

"The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Phillips*, 534 F.3d at 539 (quoting *Farmer v. Brennan*, 511 U.S.

825, 834 (1994)).  This component is met when a plaintiff's injury is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Id.* (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899-900 (6th Cir. 2004) (internal quotations omitted)).  It is also sufficient to show that the plaintiff "actually experienced the need for medical treatment, and that need was not addressed within a reasonable time frame."  *Id.* at 539-40 (quoting *Blackmore*, 390 F.3d at 899-900).

Plaintiff has failed to identify facts that would have alerted a layperson to her need for medical attention beyond that provided by Defendant Madden.  When Plaintiff began feeling sick, she was moved to a holding cell for close observation.  While there, she exhibited symptoms consistent with those she had experienced during prior withdrawals from pain pills.  Defendant Madden and CCDC anticipated that Plaintiff would display such symptoms because Plaintiff expressly warned them that she expected to suffer withdrawal symptoms.  Moreover, even after visiting, neither Plaintiff's father nor her grandfather informed CCDC staff that Plaintiff needed immediate medical care, even though both testified that they would have taken action if Plaintiff needed to be hospitalized.

Additionally, Plaintiff has presented no evidence that Defendants failed to provide medical treatment within a reasonable time frame after Plaintiff demonstrated a need for it.  Instead, Defendant Madden testified that Bush's symptoms were similar to those of other individuals during withdrawal and that in her experience "most withdrawals last 14 days" and some even take "almost 30 days to get back to normal."  (Doc. # 27-3 at 15-16).  Defendant Madden also stated that Plaintiff never indicated that she needed to go to the hospital, and also that the symptoms were similar to those she experienced during her prior withdrawals.  (Doc. # 27-3 at 14-15).  Moreover, as soon as Plaintiff exhibited symptoms

7

inconsistent with withdrawal, during the early morning of January 13, Defendant Madden took immediate and appropriate action by directing CCDC staff to take Plaintiff to the hospital.

### 2. Subjective Component

To establish the subjective component, Plaintiff must prove that a CCDC official "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The Supreme Court has left no question that this is truly a subjective test: "[A]n official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (citing *Farmer*, 511 U.S. at 838). This subjective element "is meant to prevent the constitutionalization of medical malpractice claims," so a plaintiff "must show more than negligence or the misdiagnosis of an ailment." *Id.* (citing *Estelle*, 429 U.S. at 106). Accordingly, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*

Importantly, however, Plaintiff need not show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer*, 511 U.S. 835). Rather, Plaintiff need only show that the prison official recklessly disregarded the risk of harm. *Id.* Because prison officials "do not readily admit this subjective component . . . 'it is permissible for reviewing courts to infer from circumstantial

8

evidence that a prison official had the requisite knowledge.'" *Phillips*, 534 F.3d at 540 (quoting *Farmer*, 511 U.S. at 836).

Plaintiff Bush readily acknowledges that she received medical treatment throughout her time at CCDC. Bush testified that she was seen once or twice a day by Defendant Madden who checked on her and tested her vital signs, which were good. (Doc. # 25-3 at 15, 28-29). Defendant Madden also gave Plaintiff medicine to treat her withdrawal symptoms. (Doc. # 25-3 at 17-18). Additionally, Defendant Madden brought Plaintiff food from outside CCDC which she believed would help Plaintiff feel better and would be easier to keep down. (Doc. # 25-3 at 29). Indeed, Plaintiff even confirmed that Defendant Madden and CCDC staff believed that she was merely suffering withdrawal symptoms. (Doc. # 25-3 at 11, 16, 17, 30).

Far from arguing—not to mention raising a genuine factual dispute—that Defendants subjectively perceived facts from which to infer a substantial risk to Plaintiff and then disregarded that risk, Plaintiff has acknowledged that none of the staff at CCDC intentionally prevented her from going to the hospital and, further, that if CCDC staff believed she needed to go the hospital they would have taken her. (Doc. # 25-3 at 27-28). Indeed, Plaintiff testified that CCDC staff always responded when she indicated that was sick or needed assistance. (Doc. # 25-3 at 28).

Perhaps even more persuasive is that the hospital's initial examination on January 13, 2009 also failed to properly diagnose Plaintiff's condition. Instead, the hospital's "admitting impression" was "intractable nausea and vomiting secondary to narcotic withdrawal"—precisely Defendant Madden's belief. (Doc. # 25-7 at 2). It was not until two days later when Plaintiff began suffering from a high-grade fever and her white blood count

9

elevated that the hospital took additional action. And even then, the hospital needed to conduct exploratory surgery to properly diagnose Plaintiff. These facts prove that Defendants did not subjectively perceive and ignore a risk to Plaintiff's health. This evidence also establishes that—though it is not the standard—there was no way that Defendants could or should have known that Plaintiff was suffering from anything more than withdrawal symptoms, particularly before Plaintiff began suffering from a high-grade fever.

Because Plaintiff has failed to raise a genuine dispute of material fact as to either of the two prongs of the "deliberate indifference" standard—least of all both prongs—Defendants' motions for summary judgment will be granted. This determination renders Defendants' additional arguments for dismissal moot.

### III.    CONCLUSION

For the foregoing reasons **IT IS ORDERED** that,

1. Defendants Carter County Detention Center and Carter County, Kentucky's motion for summary judgment (Doc. # 25) is **GRANTED**;

2. Defendants Belinda Madden and Southern Health Partners, Inc.'s motion for summary judgment (Doc. # 27) is **GRANTED**;

3. Plaintiff Katrina Bush's Complaint (Doc. # 1-2) is **DISMISSED with prejudice**;

4. This is a **FINAL** and **APPEALABLE** Order; and

5. This matter is **STRICKEN** from the active docket of the Court.

A separate Judgment shall be entered concurrently herewith.

This 29th day of August, 2011.



Signed By:

*David L. Bunning*   *DB*

United States District Judge

G:\DATA\ORDERS\Ashland Civil\2010\10-16-MSJ Order.wpd